IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ISMAEL RODRIGUEZ, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | No. 06-4063 |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of Social Security, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM RE: SOCIAL SECURITY APPEAL**

**Baylson, J.**                                                                                                          **January 29, 2009**

Plaintiff, Ismael Rodriguez, seeks judicial review of the decision by the Commissioner of the Social Security Administration ("Defendant") denying his application for Social Security Disability Income ("SSDI") and Social Security Income ("SSI") under the Social Security Act ("the Act"), 42 U.S.C. §§ 1381-83(c)(2000).  For the reasons described below, the Court will reverse the decision of the Administrative Law Judge and remand for further consideration.

**I.       Background and Procedural History**

On January 21, 2003, Plaintiff filed an application for SSDI and SSI benefits under Titles II and XVI respectively of the Social Security Act.  (R. 79).  Plaintiff alleges that as of April 18, 2001, he has not been able to work because of physical and mental disability, particular pain in his knees, ankles and lower back as well as depression and nervousness.  (R. 85-84).

The application was initially denied on June 5, 2003 because the "medical evidence [did]

not show any combination of physical impairments that is severe enough to keep [Plaintiff] from working," although it did show "significant problems with anxiety and depression."  (R. 59). Plaintiff filed a timely request for a hearing, which was held on August 12, 2004 before Administrative Law Judge ("ALJ") Jonathan Wesner.  (R. 12, 22).

On December 9, 2004, the ALJ issued a decision finding that Plaintiff suffered from severe impairments, including degenerative joint disease, mood disorder, diabetes, and obesity, and would not be able to perform his past relevant work.  (R. 14, 17).  However, the ALJ concluded that Plaintiff was not disabled under the Act because there were jobs available in the national economy that Plaintiff could perform, given his residual functional capacity.  (R. 18). Plaintiff filed a timely request for review by the Appeals Council on February 5, 2005, which was denied on July 7, 2006.  (R. 271, 4).  Pursuant to 42 U.S.C. §§ 405(g) and 1383(c), Plaintiff then filed the instant action, requesting this Court reverse the decision of the Administration. (Doc. 11).

## II.     Legal Standards

### A.     Jurisdiction

The Social Security Act provides for judicial review by this Court of any "final decision of the Commissioner of Social Security" in a disability proceeding.  42 U.S.C. § 405(g) (2000).

### B.     Standard of Review

On judicial review of the Commissioner's decision, the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive."  Id.  "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion . . . .'"  Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005) (quoting Reefer v. Barnhart, 326

F.3d 376, 379 (3d Cir. 2003)).  In reviewing the record for substantial evidence, however, this Court must "not 'weigh the evidence or substitute [its own] conclusions for those of the fact finder.'"  Rutherford, 399 F.3d at 552 (quoting Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992)).  This Court's review of the legal standards applied by the ALJ is plenary.  See Allen v. Barnhart, 417 F.3d 396, 398 (3d Cir. 2005).

  C. **Disability Claims Analysis**

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

The Commissioner of the Social Security Administration has promulgated regulations requiring a five-step analysis to determine the eligibility of claimants for benefits.  First, if the claimant is engaged in substantial gainful activity, the claim must be denied.  20 C.F.R. §§ 404.1520(b), 416.920(b).  Second, the claim must be denied unless the claimant is suffering from a severe impairment or combination of impairments that significantly limits physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  Third, if the claimant's severe impairment(s) meets or equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claim is approved.  20 C.F.R. §§ 404.1520(d), 416.920(d).

Fourth, if the claim is not approved under Step 3, the claim will be denied if the claimant retains the residual functional capacity ("RCF") to meet the physical and mental demands of his or her past relevant work.  20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).  Finally, if the claimant does not retain the RFC to perform past relevant work and there is no other work in the national

economy that the claimant can perform, considering his or her RFC, age, education, and past relevant work experience, then the claim will be approved. 20 C.F.R. §§ 404.1520(g), 416.920(g).

### III.   Discussion

Plaintiff argues that the ALJ made several errors in rendering his decision, including: (1) violating Plaintiff's due process rights to a full and fair hearing when he indicated that he believed Plaintiff was disabled and focused the hearing on identifying an onset date rather than establishing Plaintiff's disability; (2) failing to give proper weight to the various opinions of treating and examining physicians; and (3) concluding that Plaintiff's comments were not particularly credible.

#### A.   The ALJ Violated Plaintiff's Due Process Rights at the Administrative Hearing by Making Misleading Comments on Plaintiff's Disability

Plaintiff argues that the ALJ deprived him of his due process rights at the August 12, 2004 hearing by implying that the ALJ had already found Plaintiff disabled and that the primary unresolved issue was the onset date. Plaintiff contends that in suggesting he had already determined Plaintiff's disability, the ALJ limited the discussion at the hearing to when the disability began. Had Plaintiff known the ALJ was still considering the issue of whether Plaintiff was currently disabled, Plaintiff would have presented additional evidence. As a result, Plaintiff argues he was not afforded the full and fair hearing he constitutionally deserves. See 42 U.S.C. §405(b)(1) (providing claimant a right to a hearing at which witnesses may testify and evidence may be received); Ventura v. Shalala, 55 F.3d 900, 902 (3d Cir. 1995) ("[D]ue process requires that the hearing be full and fair." (citing Richardson v. Perales, 402 U.S. 389, 401-02 (1971)).

According to the Third Circuit, a plaintiff's right to a fair hearing "is violated where a claimant is deprived of the opportunity to present evidence to an ALJ in support of his or her, or where the ALJ exhibits bias or animus against the claimant." Bordes v. Commissioner of Soc. Sec., 235 Fed. Appx. 853, 857 (citing Ventura, 55 F.3d at 902-903); see also Hess v. Sec. of Health, Educ. and Welfare, 497 F.2d 837, 841 (3d Cir.1974) (holding plaintiff was deprived of a full and fair hearing where the ALJ failed to secure readily obtainable evidence to resolve doubts about Plaintiff's right to disability benefits).

The transcript of the hearing reveals that the ALJ did imply that Plaintiff was clearly disabled as of the hearing. At the beginning of the hearing, Plaintiff provided the ALJ with additional materials on two recent hospitalizations for severe depression, in the summers of 2003 and 2004. (R. 25). After briefly examining those documents, the ALJ explained that Plaintiff's physical impairments "didn't really jump out at me" and that he would not find Plaintiff disabled "because of his physical condition, but rather because of his psychological condition." (R. 26-27). Indeed, the documents from Plaintiff's recent hospitalization contained new, more severe diagnoses of "major depression" and "depression with psychosis" (as opposed to earlier diagnoses of "depression without psychosis") and assess Plaintiff with a Global Assessment of Functioning ("GAF") score much lower than on previous occasions. (R. 248-54, 259-60; 174, 180-82). Based on those documents, the ALJ suggested that he had already concluded Plaintiff was disabled and that he simply needed to question the vocational expert, after which he could decide the case without a full hearing, assuming the records filled in the gaps. (R. 27).

The ALJ commented that he was "probably going to ask [the Plaintiff] to amend the onset date," (R. 27), leading to a brief discussion about when Plaintiff began treatment for his

depression and anxiety at Ponce/Pennsylvania Counseling, (R. 27-30). The ALJ specifically noted that "he's disabled today," and "the records have to catch up to that, that's not the problem with the case." After that statement, the ALJ asked Plaintiff to present any witnesses, and Plaintiff presented the testimony of his son's girlfriend, Jashydee Rivera, who remarked on Plaintiff's behavior and mood when she lived with him in 2001, during the time Plaintiff alleges his disability began. (R. 31-36). Plaintiff's attorney specifically told Ms. Rivera to compare the Plaintiff's behavior in 2001 to his current disposition, because "it's pretty clear he's really sick now." (R. 33). Once Ms. Rivera testified, the ALJ questioned Plaintiff on his past relevant work and then questioned the vocational expert, after which the hearing ended. (R. 36-50).

      The government responds that the ALJ never gave a definitive legal ruling on the issue of Plaintiff's disability at the hearing and that all of his statements regarding Plaintiff's disability were qualified by the ALJ's request for additional records. While it is true that the ALJ did indicate that additional records would help support a finding of disability, this Court cannot ignore the clear implication of the ALJ's assertion that "he's disabled today" or the actual impact that comment had on the hearing and Plaintiff's strategy. That statement, combined with the ALJ's simultaneous consideration of Plaintiff's recent hospitalizations and the ALJ's focus on the discrepancy over the onset date, would lead any reasonable person to conclude that the ALJ believed the Plaintiff to be disabled as of the hearing. Plaintiff and his attorney did in fact believe the ALJ had so concluded and directed the rest of their testimony on establishing Plaintiff's earliest symptoms. Counsel even instructed the witness not to comment on Plaintiff's current behavior but to focus on his symptoms from 2001. Even if the ALJ did not intend to express an opinion on Plaintiff's disability status at the hearing, his comments effectively

prevented Plaintiff from presenting additional evidence on his current disability because the Plaintiff reasonably believed such evidence was not necessary. Thus, Plaintiff was deprived of an opportunity for a full and fair hearing on the issue of his disability.

Furthermore, while the government contends in its brief that the ALJ had always qualified his finding of disability on the delivery of additional medical records and thus Plaintiff was found not disabled because he did not provide those records, the ALJ did not indicate anywhere in his actual opinion that he found Plaintiff not disabled because of the lack of records corroborating his recent hospitalizations. Rather, the opinion reveals that the ALJ simply believed that Plaintiff's recent hospitalizations were "acute" episodes that were not reflective of Plaintiff's long term mental health. (R.16). As a result, the ALJ gave less weight to the opinions of the treating physicians during these "acute" episodes. (Id.) Furthermore, the ALJ never again requested additional documents to help explain the recent hospitalizations and failed to secure the necessary corroborating evidence, which, as in Hess, deprived the Plaintiff of his due process rights.

The Court cannot predict how any additional documents clarifying Plaintiff's illness would have influenced the ALJ's decision or supported a finding that Plaintiff was more severely limited in his ability to work. However, the Court can conclude that Plaintiff was not given a real opportunity to provide such evidence, as he reasonably believed it was unnecessary to do given the ALJ's misleading comments, and thus the Plaintiff's hearing was fundamentally unfair. Admittedly, Plaintiff could have independently submitted additional records to support his recent hospitalizations and establish the increasing severity of his illness. Given the benefit of hindsight at this time, Plaintiff probably should have done so to further secure his disability

status. Still, the Court believes the ALJ's conduct unfairly restricted the focus of the hearing and ultimately deprived Plaintiff of his due process rights, requiring this Court to remand the case for reconsideration.

### B. The ALJ Gave Proper Weight to the Opinions of Plaintiff's Physicians

Plaintiff also complains that the ALJ improperly weighed the various opinions of Plaintiff's treating and consulting physicians, without adequately explaining why he was assigning a particular weight to any given opinion. Specifically, Plaintiff questions why the ALJ decided to give little weight to Plaintiff's treating physicians from his recent hospitalizations because those physicians treated Plaintiff for an "acute period," but then gave great weight to the opinion of Dr. Einsig, the consulting physician, who only met with Plaintiff once. (R. 16-17).

According to the Third Circuit, an ALJ may reject the opinion of a treating physician provided the ALJ gives an adequate explanation for doing so. Mason v. Shalala, 994 F.3d 1058, 1067 (3d Cir. 1993). The ALJ must consider several factors, including the length, nature, and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record evidence, any specialization of the opining physician, and other factors the plaintiff raises, in determining how to weigh the physician's opinion. 20 C.F.R. § 416.927(d)(2)-(6); 20 C.F.R. § 1527(d)(2)-(6).

Based on that standard, the Court does not find the ALJ erred in weighing the opinions of the various treating and consulting physicians. As discussed above, the Court recognizes that the weight given to the opinions of the treating physicians from Plaintiff's recent hospitalizations may have been unfairly impacted by the ALJ's conduct at the hearing, which resulted in Plaintiff not submitting additional evidence to corroborate those opinions. However, when considered

separately from the problems associated with the hearing, the weight given to those opinions is not itself troublesome under the standard noted above. The ALJ provided a sound justification for giving less weight to the opinions of the treating physicians from the recent hospitalizations than to the treating physicians from Ponce/Pennsylvania Counseling, namely that the hospitalizations were for short periods of time and reflected acute situations whereas Plaintiff's treatment at Ponce/Pennsylvania Counseling was for an extended period and better reflected his long-term mental health. (R. 16). Although, given the record, the ALJ could have found that the more recent opinions reflected a deteriorating condition, the alternative finding that the hospitalizations were simply "acute" episodes does not lack substantial evidence given the record.

     Moreover, that the ALJ assigned great weight to the opinion of the consulting Physician, Dr. Einsig, who only saw Plaintiff once, is not necessarily inconsistent with his treatment of the mental health physicians. Dr. Einsig's conclusion on Plaintiff's physical impairments was not inconsistent with the opinions and assessments of Plaintiff's physical problems by other physicians, but the opinion of the treating physicians during the recent hospitalizations was clearly more severe than, if not inconsistent with, the opinions of the Ponce/Pennsylvania Counseling specialists. Thus the ALJ may have had more reasonable grounds for rejecting the opinions of the treating physicians during the hospitalizations than for rejecting Dr. Einsig's opinion, even though both only saw Plaintiff for a limited period of time.

     Still, had the Plaintiff been given the opportunity to present additional evidence on recent developments in his mental health, or at least not been given the impression by the ALJ that such evidence was unnecessary, the weight given to the various opinions may have been quite

different. Thus, while the Court does not independently find the ALJ erred in assigning certain weights to the opinions of the various physicians, the Court does note that the treatment of those opinions was impacted by the ALJ's conduct at the hearing, further demonstrating the unfairness of the hearing.

### C. The ALJ Improperly Determined Plaintiff's Testimony Was Not Credible

#### 1. The ALJ's Assessment of Plaintiff's Credibility

Plaintiff further suggests that the ALJ erred in not finding Plaintiff's testimony credible. The ALJ specifically found that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms," but the Plaintiff's statements, and those of Ms. Rivera, "concerning the intensity, duration and limiting effects [of Plaintiff's impairments] are not entirely credible." (R. 15). "An ALJ must give great weight to a claimant's subjective testimony of the inability to perform even light or sedentary work when this testimony is supported by competent medical evidence." Schaudeck v. Commissioner of Soc. Sec. Admin., 181 F.3d 429, 433 (3d Cir. 1999). While the ALJ can reject a Plaintiff's subjective claims if he does not find them credible,

> the adjudicator is not free to accept or reject that individual's complaints solely on the basis of such personal observations. Rather, in all cases in which pain or other symptoms are alleged, the determination or decision rationale must contain a thorough discussion and analysis of the objective medical and the other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's personal observations. The rationale must include a resolution of any inconsistencies in the evidence as a whole and set forth a logical explanation of the individual's ability to work.

Id. (quoting SSR 95-5p, 1995 WL 670415, at *2).

The ALJ gave several reasons for his finding that Plaintiff's testimony was not credible.

First, the ALJ asserted that the "allegations are excessive given the record" because "nothing in the record supports why he has to rest every ten minutes, he has to rest while shopping, and he can only lift no more than ten pounds at one time." (R. 15). The ALJ then turned to the testimony of Mr. Bermudez, a friend and former roommate of Plaintiff who had provided comments for a previous social security application in 2001. Mr. Bermudez had testified at that time that Plaintiff was able to talk through his disagreements in a friendly manner, that he could make and keep friends, that he did not have difficulty in public, that he used good criticism as advice, and that he could handle changes although mildly inconvenienced by them. The ALJ found that this description of Plaintiff from nearly four years earlier contradicted the Plaintiff's own depiction of himself as of the time of the hearing. (Id.)

The ALJ also discredited Plaintiff's reports of dizziness and blurred vision because those symptoms "are not discussed much as side-effects in the record, which raises credibility concerns that these alleged side-effects were not as problematic as he alleged." (R. 16). Furthermore, the ALJ found that "[t]he claimant has not had the degree of care one would anticipate given the subjective allegations" and has received "generally conservative mental health care, apart from mental health care in July 2003 when he had acutely worse symptoms." (Id.) Even more distressing to the ALJ, the consulting physician, Dr. Einsig had noticed that Plaintiff had "progressively shaky legs during his examination except that he stopped shaking his legs when answering questions." (Id.) The ALJ remarked that he was unaware of any medical explanation for this, which "suggests that his leg shaking may well have been a conscious effort rather than an involuntary body action as it stopped when he had to focus more on his conversation with the doctor." (Id.) Finally, the ALJ found that "although there are several reasons" to explain the

discrepancy between the supine and sitting straight leg raises, "one reason is that the claimant attempted to manipulate the results of his test." (Id.)  Because he was already concerned about Plaintiff's credibility, the ALJ believed this discordance in test results further indicated that Plaintiff "may have overstated the extent of his physical and mental problems." (Id.)

### 2. Problems with the ALJ's Credibility Determination

This Court finds that the ALJ based its opinion on the credibility of Plaintiff's statements on the extent of his physical problems on substantial evidence, namely the reports of several physicians who did not indicate Plaintiff was as physically limited as Plaintiff suggested. However, there are numerous problems with the ALJ's reasoning as to why Plaintiff was lying or exaggerating his mental and emotional condition.

First, regarding the testimony of Mr. Bermudez, the Plaintiff submitted with his appeal to the Council a notarized letter from Mr. Bermudez redacting all of the statements made in his initial submission to the Administration, which was provided for a prior social security application by Plaintiff four years earlier.  Mr. Bermudez asserted that the written statements relied on by the ALJ were actually provided by his ex-girlfriend, without his knowledge or permission, possibly in retaliation for ongoing problems in their relationship. (R. 276). According to the Third Circuit, "[W]hen the claimant seeks to rely on evidence that was not before the ALJ, the district court may remand to the Commissioner but only if the evidence is new and material and if there was good cause why it was not previously presented to the ALJ . . . ."  Matthews v. Apfel, 239 F.3d 589, 593 (3d Cir. 2001).  At the least, the new information on Mr. Bermudez casts doubt on the ALJ's conclusion that Plaintiff is not credible because his current statements were inconsistent with those of a witness four years earlier.  While the

information is thus clearly material, Plaintiff has not explained why he did not provide this information earlier.  Still, because the Court is remanding this case regardless, due to the due process problems at the hearing, Plaintiff should have an opportunity on remand to present this evidence and his reason for not providing it sooner, and the ALJ should consider that information when reevaluating the case.

Moreover, many of the ALJ's conclusions lack substantial evidence and proper explanations.  For example, the ALJ found that Plaintiff was not credible because Plaintiff was treated conservatively for his mental health condition, but the ALJ did not explain why someone with the Plaintiff's alleged mental conditions would necessarily require more aggressive treatment or indicate what type of treatment would be more consistent with Plaintiff's complaints.  The ALJ does not provide a thorough explanation, as required by Schaudeck, 181 F.3d at 433, for his ultimate conclusion that Plaintiff's treatment was inconsistent with Plaintiff's subjective complaints and therefore Plaintiff must be exaggerating.  The ALJ also infers from the lack of discussion in the record of blurred vision and dizziness as side effects of Plaintiff's medications that Plaintiff must be lying about those symptoms as well.  Yet the ALJ's conclusion here is not based on contradictory or inconsistent evidence, but rather on the absence of information, which the ALJ simply assumes, without any justification or discussion, must be due to those symptoms not actually existing.  Similarly, although the ALJ notes that there may be several explanations for the discrepancy in the leg test results, the ALJ chose to believe the discordance indicates Plaintiff was lying but did not provide a thorough discussion to explain that choice.

Finally, the ALJ also assumes Plaintiff is faking his leg shakiness because there is no

medical reason for the shaking explicitly identified in the record and the shaking stopped during conversation with one physician. Yet leg tremors such as this are common symptoms of anxiety, one of Plaintiff's alleged illnesses.[1] See www.anxientycentre.com (last visited January 8, 2009); (R. 203) (evaluating physician commented that Plaintiff was "pleasant but very anxious male, shaking his knees"). Plaintiff also explained to one physician that he thinks the movement makes the pain in his legs, another one of Plaintiff's alleged impairments, less severe. (R. 210). Thus it is unclear why the ALJ assumed the shakiness reflected dishonest, especially in light of the reasonable alternative explanations. Once again, the ALJ again did not offer a thorough explanation for his seemingly arbitrary choice as to the cause of Plaintiff's symptom. Moreover, the record is replete with references to Plaintiff's leg shakiness from long before Plaintiff filed his current application, at which time there was much less incentive to lie. (R. 186, 188, 203, 210, 211, 231). This history implies a real medical condition or symptom of a medical condition far more easily than it implies Plaintiff is faking the symptom.

---

[1] The Court observes that the ALJ summarily rejected Plaintiff's alleged anxiety as an impairment because "his long-term mental health sources generally noted depression as his mental disorder." (R. 14). The basis for the ALJ's conclusion in this matter is also unclear. Although the diagnoses in the record are usually for "depression," the records contain numerous notations by Plaintiff's examining physicians that Plaintiff was suffering from anxiety or appeared severely anxious. (R. 125, 126, 173, 175, 176, 203, 210). On several occasions, Plaintiff's assessment by treating physicians and mental health specialists specifically indicated anxiety. (R. 184, 185, 203, 211, 213, 218). Even the initial determination by the Administration found Plaintiff suffered from significant anxiety and depression. (P. 59).

Thus, based on the record and without more explanation from the ALJ, this Court finds that the ALJ's conclusion that Plaintiff's anxiety was not an impairment is not supported by substantial evidence. This is yet another example of the lack of support and analysis in the ALJ's opinion and his general improper treatment of Plaintiff's case. Furthermore, this unsubstantiated conclusion, which ignores Plaintiff's documented anxiety, impacts the ALJ's assessment of Plaintiff's credibility and the extent of his limiting impairments because the ALJ does not consider the anxiety as a possible source of some of Plaintiffs symptoms, assuming instead that Plaintiff is lying about these unexplained ailments.

The ALJ explains that all of these instances combined indicate Plaintiff is not credible. However, the ALJ cannot render his conclusions on the basis of "personal observation" but must include a "thorough discussion and analysis of the objective medical evidence and other evidence." Schaudeck, 181 F.3d at 433. Furthermore, the ALJ "may not make speculative inferences from medical reports." Plummer v. Apfel, 186 F.3d 422, 429 (1999). Yet, the ALJ's opinion here is nearly devoid of substantial discussion and instead appears to be based solely on the ALJ's personal impression and speculation as to the cause of Plaintiff's alleged symptoms. Those conclusions are not based on inconsistent or contradictory evidence that clearly suggests Plaintiff is not speaking truthfully. Rather, the ALJ chose to fill in the gaps of missing medical evidence with his own opinion that Plaintiff was lying or exaggerating. In fact, the ALJ seemed to seek out reasons to infer Plaintiff's lack of truthfulness and constantly chose to believe Plaintiff was lying or faking, even when the alternative explanation is equally obvious. Where the ALJ concludes that Plaintiff was lying without addressing why the alternative explanations are not justified, the ALJ's opinion clearly lacks the required "thorough discussion and analysis of the objective medical and the other evidence." Schaudeck, 181 F.3d at 433.

  **D. Additional Problems with the ALJ's Decision**

Besides the ALJ's misleading comments at the hearing and his improper assessment of Plaintiff's credibility, the Court is also troubled by several other aspects of the ALJ's conclusion regarding the limiting nature of Plaintiff's mental health condition. The ALJ concluded that Plaintiff possesses the mental functioning of a person with a Global Assessment of Functioning ("GAF") score between 51 and 60 and asked the vocational expert to restrict his examination of available jobs to those that could be performed by someone with a GAF in that range. (R. 18,

47-48). The only other restriction the ALJ imposed on the vocational expert's assessment was for unskilled positions that required minimal interaction with the public. (R. 44). However, this approach did not take into account several other pieces of evidence on the record that indicated Plaintiff possessed a more severe and limiting condition.

### 1. Failure to Discuss the Assessment of a Consulting Physician

First, the ALJ's opinion did not address or even mention the qualitative opinions from physicians that described how Plaintiff's mental impairments would impact his ability to work. (R. 15-16). Most notably, the ALJ was silent regarding an assessment by a consulting physician, Dr. Gavazzi, which concluded that Plaintiff was moderately limited in his concentration and persistence, mildly limited in his social functioning, and moderately limited in his ability to understand, remember, and carry out detailed instructions. (R. 223, 227). Even though Dr. Gavazzi did not examine Plaintiff, the complete absence of any comment on his qualitative conclusions in the ALJ's opinion is troublesome, particularly given the Administration's ruling that it "will always consider the medical opinions in your case record." 20 C.F.R. § 416.927(b); 20 C.F.R. § 1527(b). The Third Circuit has held that an ALJ "must consider all of the evidence and give some reason for discounting the evidence she rejects," Plummer, 186 F.3d at 429 (citing Stewart v. Sec. of H.E.W., 714 F.2d 287, 290 (3d Cir. 1983)), and that an ALJ "'cannot reject evidence for no reason or the wrong reason,'" Plummer, 186 F.3d at 429 (quoting Mason, 994 F.2d at 1066). The Court finds problematic the ALJ's refusal to consider this later qualitative assessment, which notably was made during 2003, closer to the time when Plaintiff was hospitalization for his deteriorating mental health and when his GAF was found to be much lower than previously assessed.

In addition to not commenting on Dr. Gavazzi's opinion, the ALJ also did not incorporate his assessments into the hypothetical question presented to the vocational expert. Though the ALJ asked the vocational expert at the hearing to provide information on unskilled positions in which Plaintiff would have little contact with the public, the ALJ did not provide any further limiting criteria that related to Plaintiff's concentration problems or his inability to follow instructions. Importantly, "[t]estimony of a VE constitutes substantial evidence for purposes of judicial review only where the hypothetical question posed by the ALJ fairly encompasses all of an individual's significant limitations that are supported by the record." Colon v. Barnhardt, 424 F. Supp. 2d 805, 814 (E.D. Pa. 2006).

### 2.    Failure to Properly Consider Plaintiff's GAF scores

Furthermore, the ALJ was similarly silent on the assessments by physicians during Plaintiff's recent hospitalizations that placed Plaintiff's GAF in the low forties. Although Plaintiff was assessed with a GAF in this range during both hospital stays in the summers of 2003 and 2004, the ALJ dismissed those episodes as "acute" events and did not even mention the scores in his opinion. (R. 15-16). In contrast, the ALJ mentioned earlier assessments that placed Plaintiff's GAF score at or above 60. (R. 17). Under the Social Security Administration rules, a claimant's GAF score is not considered to have "a direct correlation to the severity requirements" but it does constitute medical evidence that must be addressed by the ALJ in making his disability determination. 66 Fed. Reg. 50746, 50764-65 (2000). The ALJ's silence on the lower, more recent GAF scores is thus problematic, as the ALJ must provide a reason for crediting certain scores will discrediting others. Id. at 812-13; Dougherty v. Barnhardt, 2006 WL 2433792, at *10 (E.D. Pa. Aug 21, 2006) (finding ALJ's decision was not based on substantial

evidence where it failed to disclose reasons for discounting claimant's GAF scores).

While the ALJ did finds that the recent hospitalizations were acute episodes, he did not making any specific findings regarding the GAF scores assessed during those events. Instead, the ALJ relied completely on the higher scores as determinative of Plaintiff's mental condition, even when there is other evidence in the record, such as the lower scores and the opinion of Dr. Gavazzi, that suggest the higher scores may not be accurate or current. The silence on the lower scores is compounded by the impact of the ALJ's misleading statements at the hearing, which prevented Plaintiff from presenting additional evidence on recent developments in his mental health condition that may have corroborated the lower scores. Again, because the ALJ ignored the lower scores, the vocational expert did not take those scores into account in rendering his final conclusion on the availability of jobs for Plaintiff, although the expert did state that a person with a GAF score less than 50 would not be able to perform any job in the national economy. (R. 47-48).

Thus the Court is troubled by the ALJ's treatment of all the evidence regarding Plaintiff's mental impairment and by how the ALJ incorporated that impairment into the vocational expert's assessment of available positions. The ALJ's conclusion that Plaintiff was only limited by his GAF score within the 51-60 range is not supported by substantial evidence, especially given the more recent lower GAF scores and the recent assessment by Dr. Gavazzi, both which indicate a more severe limitation. The ALJ's silence on these parts of the record combined with the impact of the ALJ's misleading statements at the hearing further support a conclusion that the ALJ erred in his decision on the nature and extent of plaintiff's mental impairments. Even more, as the ALJ's consideration of the medical evidence was incomplete, the vocational expert's opinion,

based on the higher GAF scores and only incorporating an "unskilled" limitation, does not fairly reflect all of Plaintiff's mental impairments and cannot constitute substantial evidence.

## IV. Conclusion

For the foregoing reasons, the Court finds that the ALJ's decision is not supported by substantial evidence in the record, and his opinion lacks the discussion and analysis necessary to withstand a request for review. Because the ALJ clearly erred in conducting the hearing and his subsequent conclusions were tainted by the misleading comments made at the hearing, the Court finds that the case must be remanded.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ISMAEL RODRIGUEZ, | : | |
| Plaintiff, | : | CIVIL ACTION |
| v. | : | No. 06-4063 |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | : | |
| Defendant. | : | |

**<u>ORDER</u>**

AND NOW, this 29th day of January, 2009, upon careful and independent consideration of Plaintiff Ismael Rodriguez's Motion for Summary Judgment and Request for Review (Doc. 11) and review of the record, it is hereby ORDERED that:

1) Plaintiff's Motion for Summary Judgment is GRANTED.

2) The case is remanded for further administrative proceedings not inconsistent with this opinion pursuant to the fourth sentence of 42 U.S.C. § 405(g); and

3) The clerk shall mark this case CLOSED for statistical purposes.

BY THE COURT:

/s/ Michael M. Baylson
Michael M. Baylson, U.S.D.J.

O:\Lauren\Rodriguez v. Astrue\memo.wpd